UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TAWANDA SWAIZER,

        Petitioner,

                      CASE NO. 2:06-CV-14451
v.                   JUDGE LAWRENCE P. ZATKOFF
                      MAGISTRATE JUDGE PAUL J. KOMIVES

SUSAN DAVIS,

        Respondent.
                        /

# **REPORT AND RECOMMENDATION**

*Table of Contents*

I.     RECOMMENDATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
II.    REPORT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
      A.    *Procedural History* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
      B.    *Factual Background Underlying Petitioner's Conviction* . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
      C.    *Standard of Review* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
      D.    *Sufficiency of the Evidence (Ground 2)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
           1.    *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
           2.    *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
      E.    *Erroneous Jury Instructions (Ground 3)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
           1.    *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
           2.    *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
      F.    *Scoring Error in Statutory Sentencing Guidelines (Ground 1)* . . . . . . . . . . . . . . . . . . . . . . . 14
           1.    *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
           2.    *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
      G.    *Conclusion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
III.   NOTICE TO PARTIES REGARDING OBJECTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

\*      \*      \*      \*      \*

I.    RECOMMENDATION: The Court should deny petitioner's application for the writ of habeas corpus.

II.   REPORT:

A.    *Procedural History*

      1.    Petitioner, Tawanda Swaizer, is a state prisoner, currently confined at the Huron

Valley Complex Women's Correctional Facility in Ypsilanti, Michigan.

2. On December 3, 2003, petitioner was convicted of Second Degree Murder, MICH. COMP. LAWS § 750.317, following a jury trial in the Wayne County Circuit Court. On December 18, 2003, she was sentenced to a term of 15-25 years' imprisonment.

3. Petitioner appealed as of right to the Michigan Court of Appeals raising, through counsel, the following claims:

> I. MANIFEST INJUSTICE RESULTED WHEN THE TRIAL COURT DELIVERED A LEGALLY INCORRECT, AND UTTERLY CONFUSING JURY INSTRUCTION ON VOLUNTARY MANSLAUGHTER, WHICH DEPRIVED THE JURY OF THE OPPORTUNITY TO FIND TAWANDA GUILTY OF THE LESSER CHARGE, AND FAILED TO DELIVER ANY INSTRUCTION ON THE DEFENSE OF ACCIDENT. FAILURE OF TRIAL DEFENSE COUNSEL TO OBJECT CONSTITUTES INEFFECTIVE ASSISTANCE OF COUNSEL.
>
> II. DEFENDANT'S CONVICTION IS A DENIAL OF DUE PROCESS WHERE THE EVIDENCE WAS INSUFFICIENT TO SUPPORT THE VERDICT OF GUILTY OF SECOND DEGREE MURDER. US CONST AM V, XIV; MICH CONST ART 1, SEC 17.
>
> III. THE TRIAL COURT ABUSED ITS DISCRETION IN REFUSING TO DEPART BELOW THE MANDATORY MINIMUM TERM WHERE OBJECTIVE, VERIFIABLE AND SUBSTANTIAL AND COMPELLING REASONS EXISTED TO SUPPORT A DOWNWARD DEPARTURE.
>
> IV. DEFENDANT IS ENTITLED TO RESENTENCING BECAUSE THE GUIDELINES CELL UNDER WHICH SHE WAS SENTENCED IS BASED UPON FACTS WHICH WERE NOT PROVEN TO A JURY BEYOND A REASONABLE DOUBT. BLAKELY V. WASHINGTON, 543 US __; 124 S Ct 2531; 159 Led 2d 403 (2004). DEFENDANT ACKNOWLEDGES THAT MICHIGAN COURTS HAVE REJECTED THIS INTERPRETATION OF BLAKELY.

The court of appeals found no merit to petitioner's claims, and affirmed her conviction and sentence. *See People v. Swaizer*, No. 253443, 2005 WL 1413194 (Mich. Ct. App. June 16, 2005) (per curiam).

4. Petitioner sought leave to appeal to the Michigan Supreme Court. The Supreme

Court denied petitioner's application for leave to appeal in a standard order. *See People v. Swaizer*, 474 Mich. 908, 705 N.W.2d 132 (2005).

  5. Petitioner, proceeding *pro se*, filed the instant application for a writ of habeas corpus on September 25, 2006. As grounds for the writ of habeas corpus, she raises three claims for relief:

> I. THE TRIAL COURT VIOLATED TAWANDA SWAIZER'S FEDERAL CONSTITUTIONAL RIGHTS, US CONST, AMS V, VI, XIV, AT SENTENCING BY SCORING THE STATUTORY SENTENCING GUIDELINES BASED ON ITS FINDING OF ADDITIONAL FACTS WHICH THE PROSECUTOR HAD NOT CHARGED, WHICH HAD NOT BEEN SUBMITTED TO THE JURY, AND WHICH MS. SWAIZER HAD NOT ADMITTED.
>
> II. DEFENDANT'S CONVICTION IS A DENIAL OF DUE PROCESS WHERE THE EVIDENCE WAS INSUFFICIENT TO SUPPORT THE VERDICT OF GUILTY OF SECOND DEGREE MURDER. US CONST AM V, XIV; MICH CONST ART I, SEC 17.
>
> III. THE TRIAL COURT DELIVERED AN ERRONEOUS INSTRUCTION ON VOLUNTARY MANSLAUGHTER. THE RESULT IS A DENIAL OF THE FEDERAL AND STATE DUE PROCESS RIGHT TO A FAIR TRIAL.

  6. Respondent filed her answer on April 18, 2007. She contends that petitioner's claims are without merit.

B. *Factual Background Underlying Petitioner's Conviction*

The factual background underlying petitioner's conviction was accurately summarized in the Michigan Court of Appeals's opinion:

> Swaizer's conviction arises out of the August 14, 2003 stabbing death of her boyfriend, Thomas Miller, in a parking lot across the street from their residence. Miller and Swaizer, who was pregnant, lived together in the lower unit of a two-family flat. Several friends agreed that their relationship was characterized by arguments, threats, and aggression.
> On the day of the stabbing, Miller had spent the day socializing with friends and family in his neighborhood. At some point during the evening, Miller and Swaizer began arguing about some of the guests who were at their house. Swaizer recalled that the argument "escalated," so she and Miller walked about thirty feet

3

across the street into a parking lot. Swaizer claimed that Miller then started "to push me, shoving on me, punching me in my chest and like basically manhandling me, throwing me around."

Swaizer testified that she grabbed the knife out of her purse, and that the couple's struggle then took them near some cars in the parking lot. Swaizer claimed that Miller began choking her with both his hands so that "the back of my legs were on the car and I was bent over the car." Swaizer stated that Miller was choking her for what seemed to be five minutes. Fearing for her life and that of her unborn child, Swaizer then stabbed Miller in an attempt to get him off of her, although it was dark and she could not see where she was stabbing him. Swaizer recalled that Miller then walked away and fell to the ground. Swaizer dropped the knife and immediately went screaming for help.

Witnesses testified that Swaizer admitted having stabbed Miller, but did not mention that he had been choking her. Swaizer appeared apologetic, telling one witness "I didn't mean to do it," and she stayed with Miller until the authorities arrived. Detroit Police Officer Laurie Patton testified that Swaizer appeared "shaken, maybe a little scared" and that Swaizer told her, "That's my boyfriend. I just stabbed him." Officer Patton arrested Swaizer after she again admitted that she had stabbed Miller. Swaizer explained to Officer Patton that she accidentally stabbed Swaizer during a fistfight, but she did not mention having been choked. According to Officer Patton, Swaizer told her where the knife was, was cooperative during the arrest, and appeared remorseful. Miller died from a single stab wound to the neck.

Swaizer gave a statement to police Sergeant Marion Stevenson that night. Swaizer told Sergeant Stevenson that she was having an argument with Miller, and it "escalated to a little pushing and shoving and I made a mistake and stabbed him." Swaizer explained that she only picked up the knife to scare Miller, but when he began pushing and shoving her, she stabbed him in the neck. When she saw how severely she had injured him, she screamed for someone to call EMS. She told Sergeant Stevenson that she "didn't mean to hurt him," that she "didn't do it intentionally," and that "it was a mistake." Sergeant Stevenson noted that there was no evidence that Miller had choked Swaizer.

Swaizer testified at trial that she did not intend to kill Miller and "never meant to hurt him at all," but simply wanted to scare him so he "wouldn't manhandle me again." Swaizer claimed that she did not tell the police that Miller was choking her because she was distraught and all she could think about was the fact that she "had made a mistake and stabbed him."

After nearly five hours of deliberations, the jurors sent a note to the trial court judge indicating that they were deadlocked and asking, "what do we do next?" The judge instructed the jurors to continue deliberations, which they did. The jurors then requested to have the testimony of one witness read back, which was done. The jury ultimately found Swaizer guilty of second-degree murder.

*People v. Swaizer*, No. 253443, 2005 WL 1413194, at *1-2 (Ct. App. Mich. June 16, 2005.)

C.  *Standard of Review*

Because petitioner's application was filed after April 24, 1996, her petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996). *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997). Amongst other amendments, the AEDPA amended the substantive standards for granting habeas relief by providing:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"[T]he 'contrary to' and 'unreasonable application' clauses [have] independent meaning." *Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see also, Bell v. Cone*, 535 U.S. 685, 694 (2002). "A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams*, 529 U.S. at 405-06); see also, *Early v. Packer*, 537 U.S. 3, 8 (2002); *Bell*, 535 U.S. at 694. "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*,

5

539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also, Bell,* 535 U.S. at 694. However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also, Williams*, 529 U.S. at 409.

By its terms, § 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with "clearly established federal law as determined by the Supreme Court." Thus, "§ 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence." *Williams*, 529 U.S. at 412. Further, the "phrase 'refers to the holdings, as opposed to the dicta, of [the] Court's decisions as of the time of the relevant state-court decision.' In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (citations omitted) (quoting *Williams*, 529 U.S. at 412).

Although "clearly established Federal law as determined by the Supreme Court" is the benchmark for habeas review of a state court decision, the standard set forth in § 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require awareness of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early*, 537 U.S. at 8; *see also, Mitchell*, 540 U.S. at 16. Further, although the requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue. See *Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Phoenix v.*

*Matesanz*, 233 F.3d 77, 83 n.3 (1st Cir. 2000); *Dickens v. Jones*, 203 F. Supp. 2d 354, 359 (E.D. Mich. 2002) (Tarnow, J.).

D.    *Sufficiency of the Evidence (Ground 2)*

Petitioner contends that the prosecution presented insufficient evidence to prove beyond a reasonable doubt that she committed second degree murder. The court should conclude that petitioner is not entitled to habeas relief on this claim.

1.    *Clearly Established Law*

The Due Process Clause of the Fourteenth Amendment "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In Re Winship*, 397 U.S. 358, 364 (1970). Under the pre-AEDPA standard for habeas review of sufficiency of the evidence challenges, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). Reviewing courts must view the evidence, draw inferences and resolve conflicting inferences from the record in favor of the prosecution. See *Neal v. Morris*, 972 F.2d 675, 678 (6th Cir. 1992). In determining the sufficiency of the evidence, the court must give circumstantial evidence the same weight as direct evidence. See *United States v. Farley*, 2 F.3d 645, 650 (6th Cir. 1993).

However, under the amended version of §2254(d)(1) a federal habeas court must apply a more deferential standard of review of the state court decision. Thus, the question here is whether the Michigan Court of Appeals's application of the Jackson standard was reasonable. *See Gomez v. Acevedo*, 106 F.3d 192, 198-200 (7th Cir. 1997), vacated on other grounds sub nom. *Gomez v.*

*DeTella*, 522 U.S. 801 (1998); *Restrepo v. DiPaolo*, 1 F.Supp.2d 103, 106 (D. Mass. 1998).

While a challenge to the sufficiency of the evidence on an established element of an offense raises a federal constitutional claim cognizable in a habeas corpus proceeding, "[t]he applicability of the reasonable doubt standard . . . has always been dependent on how a State defines the offense that is charged in any given case." *Patterson v. New York*, 432 U.S. 197, 211 n. 12 (1977); *see also, Jackson*, 443 U.S. at 324 n. 16; *Mullaney v. Wilbur*, 421 U.S. at 684, 691 (1975). Thus, "[a] federal court must look to state law to determine the elements of the crime."*Quartararo v. Hanslmaier*, 186 F.3d 91, 97 (2d Cir. 1999).

Under Michigan law, the common law crime of murder is defined as second degree murder, and is punishable by up to life imprisonment. See Mich. Comp. Laws §750.317. To establish second degree murder, the prosecution must show that the defendant killed a human being with malice aforethought. In order to show malice aforethought, the prosecution must establish one of three mental states on the part of the defendant at the time of the killing: (1) intent to kill; (2) intent to commit great bodily harm; or (3) intent to create a very high risk of death or great bodily harm with the knowledge that death or great bodily harm is the probable result. *See People v. Dykhouse*, 418 Mich 488, 495, 345 N.W. 2d 150, 151 (1984); *People v. Aaron*, 409 Mich. 672, 713-14, 299 N.W. 2d 304, 319-20 (1980).

    2.    *Analysis*

Petitioner contends that there was insufficient evidence presented at trial to sustain her conviction. Specifically, she contends that the prosecution failed to present sufficient evidence of malice. The Michigan court of appeals rejected this claim. The court relied on *People v. Werner,* 254 Mich. App. 528 (2002), and began it's analysis by defining the elements of second degree

murder as (1) a death, (2) caused by an act of the defendant, (3) with malice, (4) and without justification or excuse. *See Swaizer*, 2005 WL 1413194, at *4. The court then defined malice as "the intent to kill, the intent to cause great bodily harm, or the intent to do an act in wanton and willful disregard of the likelihood that the natural tendency of such behavior is to cause death or great bodily harm." *Id.* The court explained that actual intent to harm or kill is not required and the prosecution must only prove that the defendant intended to commit the act that was in obvious disregard of life-endangering consequences. *See id.* Finally, the court stated that circumstantial evidence and the reasonable inferences that arise from the evidence can constitute satisfactory proof of the elements of the crime. *See id*. The court of appeals concluded that malice was established by the facts that Swaizer pulled out a knife and held it close to Miller's neck while he was in close proximity and hovering over Swaizer during a struggle. *See id*. This behavior was enough evidence to prove to a reasonable jury that the defendant's act was in obvious disregard of life endangering consequences. *See id*.

Petitioner contends that the prosecution failed to prove beyond a reasonable doubt the absence of heat of passion. In *People v. Carines*, the Michigan Supreme Court held that the element of malice could be inferred based on the facts and circumstances when defendant used a knife in the homicide or set in motion a force likely to cause death or great bodily harm by engaging in an armed robbery. *People v. Carines*, 460 Mich. 750, 759, 597 N.W.2d 130, 136 (1999). The autopsy established that a knife was used and the victim died from a single stab wound to the neck. *Id*. at 760, 597 N.W.2d at 136. The court reasoned that even if the defendant had not intended to kill the victim, the nature of the killing (i.e. use of a knife and armed robbery) indicated that it was not an accident nor was it done without malice. *Id*. at 760, 597 N.W.2d at 137. Similarly, in this case the

element of malice is supported by the nature of the killing. Petitioner brought a knife with her when she and the victim traveled about thirty feet across the street from their residence to continue an argument. Swaizer testified that she took the knife out of her purse before the victim began choking her. Then, according to petitioner's testimony, she stabbed the victim during a physical struggle. Like the victim in *Carines*, the victim in this case died from a single stab wound to the neck. While Swaizer did not commit a robbery, she did set in motion a force likely to cause death or great bodily harm not only by bringing a knife to a secluded area where she expected to continue an argument with the victim, but also by taking the knife out of her purse and holding it close to the victim's neck and then stabbing him. These actions were in obvious disregard of life-endangering consequences. Therefore, a reasonable jury could infer that Swaizer acted with malice, and not in the heat of passion.

The courts have repeatedly found similar circumstances, where defendant used a deadly weapon to commit homicide, sufficient to infer the malice element of second degree murder under Michigan law. *See People v. Nichols*, No. 276246, 2008 WL 1733658 (Mich. Ct. App. Apr. 15, 2008) (defendant pulled out a gun before an ensuing fight and fired it during the fight while in close proximity to victim); *People v. Dunmire*, No. 272737, 2007 WL 4404471 (Mich. Ct. App. Dec. 18, 2007) (defendant used an eight-inch kitchen knife to create a single puncture in the chest of the victim when the victim was "in her face" calling her names.)

In short, there was sufficient evidence presented from which the jury could infer that the petitioner acted with malice aforethought sufficient to constitute second degree murder. Accordingly, the Michigan Court of Appeals' resolution of this claim was not an unreasonable application of *Jackson v. Virginia*, and the Court should conclude that petitioner is not entitled to

habeas relief on this claim.

E.  *Erroneous Jury Instructions (Ground 3)*

Petitioner contends that the trial court delivered an erroneous jury instruction on voluntary manslaughter, and that this instruction denied her a fair trial. The court should conclude that petitioner is not entitled to habeas relief on this claim.

1.  *Clearly Established Law*

In order for habeas corpus relief to be warranted on the basis of incorrect jury instructions, a petitioner must show more than that the instructions are undesirable, erroneous or universally condemned; rather, taken as a whole, they must be so infirm that they rendered the entire trial fundamentally unfair. See *Estelle v. McGuire*, 502 U.S. 62, 72 (1991); *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977); *Wood v. Marshall*, 790 F.2d 548, 551-52 (6th Cir. 1986); *cf. United States v. Sheffey*, 57 F.2d 1419, 1429-30 (6th Cir. 1995) (standard of review for jury instructions challenged on direct criminal appeal). As the Supreme Court noted in *Estelle*, the court should "also bear in mind [the Supreme Court's] previous admonition that we 'have defined the category of infractions that violate "fundamental fairness" very narrowly.'" *Estelle*, 502 U.S. at 72-73 (quoting *Dowling v. United States*, 493 U.S. 342, 352 (1990). If an instruction is ambiguous and not necessarily erroneous, it can run afoul of the Constitution only if there is a reasonable likelihood that the jury has applied the challenged instruction in a way that violated the Constitution. *See Estelle*, 502 U.S. at 72 & 37 n.4, *Boyde v. California*, 494 U.S. 370, 380 (1990). Nonetheless, instructional errors of state law will rarely form the basis for federal habeas corpus relief. *See Estelle*, 502 U.S. at 71-72.

2.  *Analysis*

The trial court gave the following instruction to the jury on voluntary manslaughter:

> The crime of murder may be reduced to voluntary manslaughter if the defendant acted out of passion or anger brought about by adequate cause and before the defendant had a reasonable time to calm down.
>
> For manslaughter, the following two things must be present. First, when the defendant acted her thinking must be disturbed by emotional excitement to the point that a reasonable person might have acted out of impulse without thinking twice, from passion instead of judgment. This emotional excitement must have been the result of something that would cause a reasonable person to act rashly or on impulse. The law does not say what things are enough to do this. This is for you to decide.
>
> Second, the killing itself must result *in* this emotional excitement. The defendant must have acted *for* a reasonable time *at best* to calm down and return to reason.

*Swaizer*, 2005 WL 1413194, at *2-3. Petitioner only objects to the italicized portion of the last paragraph. Petitioner argues that the trial court should have said, "Second, the killing itself must result *from* this emotional excitement. The defendant must have acted *before* a reasonable time *had passed* to calm down and return to reason." *Swaizer*, 2005 WL 1413194, at *3.

The instructions given by the trial court in this case, while not perfect, deviated only slightly from the standard instruction. In fact, petitioner only takes issue with four words from the last sentence of the instruction: "Second, the killing must result in this emotional excitement. The defendant must have acted for a reasonable time at best to calm down and return to reason." *People v. Swaizer*, No. 253443, 2005 WL 1413194, at *3 (Mich.Ct.App. June 16, 2005). The deviation in the instruction was so minor that it's possible the error was only in the transcription, and that the instruction orally given to the jury was correct. In *Hardaway v. Withrow*, 305 F.3d 558, 562 (6th Cir. 2002) the Sixth Circuit came to the same conclusion. The jury requested a copy of the elements of "Second degree murder and manslaughter" to compare. According to the record, the judge told counsel that he sent in to the jury the elements of "second degree involuntary manslaughter." The Sixth Circuit held that it would have made sense for the judge to say "second degree murder and voluntary manslaughter" which when spoken aloud is difficult to distinguish from second degree

12

murder involuntary manslaughter." Taking into account the instructions actually given to the jury, the logical inference was that the court's statement was mistranscribed by the court reporter. *See id*.

In this case, the words "at best" (from the record) and "had passed" (from ideal instruction) sound alike when spoken aloud. It is quite possible, especially if the judge was speaking fast, that the court reporter mistranscribed what was actually said. The same is true for the terms "for" (from the record) and "before" (from the ideal instruction). Except for this single sentence at issue, the rest of the instruction gave a proper explanation of voluntary manslaughter, and it is unlikely that the judge would give inconsistent instructions on the same offense. Taking this into account, it is probable that the instruction was in fact correct but was mistranscribed by the court reporter.

However, even if there was no error in transcription, and the error was in the actual instruction as read to the jury, the instruction as a whole was sufficient to explain the lesser included offense to the jury. The trial court correctly instructed the jury that "the crime of murder may be reduced to voluntary manslaughter if the defendant acted out of passion or anger brought about by adequate cause and before the defendant had a reasonable time to calm down." *People v. Swaizer*, No. 253443, 2005 WL 1413194, at *2 (Mich.Ct.App. June 16, 2005). While the single sentence at issue here, when taken alone, is a misstatement of voluntary manslaughter, the instruction as a whole was adequate. Petitioner argues that this error mislead the jury to believe the emotional excitement must be a result of the killing rather than the killing be a result of the emotional excitement. However, the first part of the instruction explained the offense correctly and was sufficient for the jury to understand what the second part was meant to communicate. Upon hearing the entire instruction, a reasonable juror would understand the correct elements of voluntary manslaughter. This error did not prejudice the defendant in this case and does not rise to the level

of rendering the entire trial fundamentally unfair.

In short, the jury instruction, while not perfect, did not deviate enough from the standard instruction to confuse the jury as to the elements of the offense. The error did not prejudice the defendant nor did it render the entire trial fundamentally unfair. Accordingly, the court should conclude that petitioner is not entitled to habeas relief on this claim.

F.  *Scoring Error in Statutory Sentencing Guidelines (Ground 1)*

Petitioner claims that her constitutional rights were violated because the statutory sentencing guidelines were scored based on facts that had not been submitted to the jury. The court should conclude that petitioner is not entitled to habeas relief on this claim.

   1.  *Clearly Established Law*

In *Apprendi v. New Jersey*, 530 U.S. 466 (2000), the Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id*. at 490. In *Blakely v. Washington*, 542 U.S. 296 (2004), the Court considered the applicability of *Apprendi* to a state sentencing guidelines scheme. The state in that case argued that guidelines findings were not prohibited by *Apprendi* because *Apprendi* prohibited only factual findings at sentencing which increased the statutory maximum penalty to which the defendant was exposed. The Court in *Blakely* rejected this argument and struck down the state guidelines scheme, explaining that:

> the "statutory maximum" for *Apprendi* purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant. In other words, the relevant "statutory maximum" is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose without any additional findings. When a judge inflicts punishment that the jury's verdict alone does not allow, the jury has not found all the facts "which the law makes essential to the punishment," and the judge exceeds his proper authority.

14

*Blakely*, 542 U.S. at 303-04 (citations omitted) (emphasis in original).

    2.    *Analysis*

Unlike the determinate sentencing scheme at issue in *Blakely*, Michigan law provides for an indeterminate sentencing scheme. Under Michigan law the defendant is given a sentence with a minimum and a maximum sentence. The maximum sentence is not determined by the trial judge but is set by law. *See People v. Drohan*, 475 Mich. 140, 160-61, 715 N.W.2d 778, 789-90 (2006); *People v. Claypool*, 470 Mich. 715, 730 n.14, 684 N.W.2d 278, 286 n.14 (2004); MICH. COMP. LAWS § 769.8. "[M]ichigan's sentencing guidelines, unlike the Washington guidelines at issue in *Blakely*, create a range within which the trial court must set the minimum sentence." *Drohan*, 475 Mich. at 161, 715 N.W.2d at 790. Under Michigan law, only the minimum sentence must presumptively be set within the appropriate sentencing guidelines range. *See People v. Babcock*, 469 Mich. 247, 255 n.7, 666 N.W.2d 231, 236 n.7 (2003) (discussing MICH. COMP. LAWS § 769.34(2)). Under Michigan law, the trial judge sets the minimum sentence, but can never exceed the maximum sentence. See Claypool, 470 Mich. at 730 n.14, 684 N.W.2d at 286 n.14.

*Blakely* is inapplicable here because *Blakely* is concerned only with the maximum penalty which is authorized by a jury's findings or a defendant's plea: if some additional factor increases the defendant's penalty beyond that which could be imposed solely on the basis of the jury's findings or the defendant's plea, *Blakely* requires that those facts be found by a jury beyond a reasonable doubt (or be themselves pleaded to by a defendant). As explained above, unlike the guidelines scheme at issue in *Blakely*, the Michigan sentence guidelines help determine only the minimum portion of a defendant's indeterminate sentence. The maximum is, in every case, the statutory maximum authorized by law. See *Claypool*, 470 Mich. at 730 n.14, 684 N.W.2d at 286

15

n.14; MICH. COMP. LAWS § 769.8. Petitioner's conviction, therefore, contained all of the factual findings necessary to impose the statutory maximum on that charge. *See Drohan*, 475 Mich. at 162, 715 N.W.2d at 790 ("Thus, the trial court's power to impose a sentence is always derived from the jury's verdict, because the 'maximum-minimum' sentence will always fall within the range authorized by the jury's verdict.").

This being the case, petitioner's sentence did not violate *Blakely* even if the trial court made additional factual findings in imposing the minimum term of petitioner's imprisonment. The Supreme Court has repeatedly made clear that the *Apprendi* rule is concerned only with the maximum sentence which is authorized by a jury's verdict or a defendant's plea. As the Supreme Court explained in *Harris v. United States*, 536 U.S. 545 (2002):

> *Apprendi* said that any fact extending the defendant's sentence beyond the maximum authorized by the jury's verdict would have been considered an element of an aggravated crime–and thus the domain of the jury–by those who framed the Bill of Rights. The same cannot be said of a fact increasing the mandatory minimum (but not extending the sentence beyond the statutory maximum), for the jury's verdict authorized the judge to impose the minimum with or without the finding.

*Harris*, 536 U.S. at 557. This distinction is important because the only issue under the Sixth Amendment is whether the judge is impinging on the role of the jury. For this reason, the Court explicitly excepted indeterminate sentencing schemes such as Michigan's from its holding in *Blakely*. Rejecting an argument raised by Justice O'Connor in dissent, the Court explained:

> Justice O'Connor argues that, because determinate sentencing schemes involving judicial factfinding entail less judicial discretion than indeterminate schemes, the constitutionality of the latter implies the constitutionality of the former. This argument is flawed on a number of levels. First, the Sixth Amendment by its terms is not a limitation on judicial power, but a reservation of jury power. It limits judicial power only to the extent that the claimed judicial power infringes on the province of the jury. Indeterminate sentencing does not do so. It increases judicial discretion, to be sure, but not at the expense of the jury's traditional function of finding the facts essential to lawful imposition of the penalty. Of course

16

> indeterminate schemes involve judicial factfinding, in that a judge (like a parole board) may implicitly rule on those facts he deems important to the exercise of his sentencing discretion. But the facts do not pertain to whether the defendant has a legal right to a lesser sentence–and that makes all the difference insofar as judicial impingement upon the traditional role of the jury is concerned.

*Blakely*, 542 U.S. at 309 (citation omitted).

Under this reasoning, it is clear that Michigan's indeterminate sentencing guideline scheme, under which the maximum is established by statute and only the minimum term is based on judicial factfinding, does not violate the Sixth Amendment. *See Bellamy v. Curtin*, No. 1:06-CV-599, 2007 WL 527988, at *4 (W.D. Mich. Feb. 14, 2007); *Mays v. Trombley*, No. 2:06-CV-14043, 2006 WL 3104656, at *3 (E.D. Mich. Oct. 31, 2006) (Hood, J.); *Worley v. Palmer*, No. 2:06-CV-13467, 2006 WL 2347615, at *2 (E.D. Mich. Aug. 11, 2006) (Cohn, J.); *Toothman v. Davis*, No. 05-CV-74561, 2006 WL 2190515, at *2 (E.D. Mich. Aug. 1, 2006) (Edmunds, J.); *Drohan*, 475 Mich. at 164, 715 N.W.2d at 791-92; *Claypool*, 470 Mich. at 730 n.14, 684 N.W.2d at 286 n.14; cf. *Williams v. Benik*, No. 04-C-966, 2005 WL 300379, at *2 (Jan. 26, 2005), vacated in part on other grounds, 2005 WL 331743 (W.D. Wis. Feb. 8, 2005) (upholding state's indeterminate sentencing scheme under *Blakely*); *State v. Rivera*, 102 P.3d 1044, 1054-55 (Hawai'i 2004) (same); *Commonwealth v. Junta*, 815 N.E.2d 254, 262 n.11 (Mass. Ct. App. 2004) (same); *Commonwealth v. Smith*, 863 A.2d 1172, 1178 (Pa. Super. Ct. 2004) (same).

Thus, *Blakely*, does not apply to this case and petitioner's Sixth Amendment rights were not violated. Accordingly, the court should conclude that petitioner is not entitled to habeas relief on this claim.

G.   *Conclusion*

In view of the foregoing, the Court should conclude that the state courts' resolution of

petitioner's claims did not result in a decision which was contrary to, or which involved an unreasonable application of, clearly established federal law. Accordingly, the Court should deny petitioner's application for the writ of habeas corpus.

III.   NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *See Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991). *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

<br>

s/Paul J. Komives
PAUL J. KOMIVES
UNITED STATES MAGISTRATE JUDGE

Dated: October 24, 2008

> The undersigned certifies that a copy of the foregoing order was served on the attorneys of record by electronic means or U.S. Mail on October 24, 2008.
>
>                                 s/Eddrey Butts
>                                 Case Manager